UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| RUSSELL DAVID DAMRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-245 |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Russell Damron seeks judicial review of the Social Security Administration's denial of his application for Supplemental Security Income ("SSI"). *See* doc. 1.

### I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Id*. at 1178 (internal quotations and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates

against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id*. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id*. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id*. (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can

past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x. 878, 879 (11th Cir. 2015) (footnote added).

## II.   BACKGROUND

Damron, who was born on July 28, 1980, was 39 years old when he applied for SSI and 42 years old at the time of the ALJ's decision. *See* tr. 29, 31, 271. He alleges disability beginning on September 19, 2019.[2] Tr. 66 (June 23, 2022 hearing transcript). Damron has a ninth-grade education. Tr. 43 (January 31, 2023 hearing transcript). He has not worked since 2007, *see* tr. 298, and therefore has no past relevant work, *see* tr. 29; *see also* 20 C.F.R. § 416.965(a) ("We do not usually consider that work you did more than five years before the time we are deciding whether you are disabled applies."). After a hearing, tr. 38-62 (January

---

adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).
[2] Damron initially alleged an onset date of February 19, 2007, but amended the onset date to September 19, 2019, during a June 23, 2022 hearing before the ALJ. *See* tr. 19, 271; *see also* tr. 66 (June 23, 2022 hearing transcript).

3

31, 2023 hearing transcript), the ALJ issued an unfavorable decision, tr. 16-31.

The ALJ found that Damron's lumbar spine pain, migraine headaches, major depressive disorder/bipolar II disorder, generalized anxiety disorder with panic attacks, and posttraumatic stress disorder ("PTSD") constituted severe impairments,[3] but that none of his impairments, alone or in combination, met or medically equaled a Listing. Tr. 21-24. He noted that Damron's mental impairments posed moderate limitations on his ability to remember or apply information, interact with others, concentrate, persist, maintain pace, and adapt or manage himself. *See* tr. 23-24. The ALJ then found that Damron retained the RFC for light work as defined in 20 CFR § 416.967(b) except:

> push/pull up to 10 pounds occasionally; stand/walk up to 6 of 8 hours; []sit up to 6 of 8 hours with normal breaks[;] . . . occasionally climb ramps and stairs but never ladders and scaffolds[;] . . . frequently balance, and occasionally stoop kneel, crouch, and crawl[;] . . . occasional overhead reaching and use of foot controls[;] . . . no exposure to unprotect heights or other hazards. Work is limited to simple, routine work and

---

[3] The ALJ determined Damron's hypertension, GERD, hyperlipidemia, pain from an old gunshot wound, and cellulitis and hematoma in his right hand resulting from a lawnmower accident were not severe impairments. Tr. 21-22. He found that Damron's past alcohol and prescription drug abuse, which is in reported remission, was not material to Dameron's impairments as of the application date. Tr. 22. He also found that Damron's alleged hip pain was not a medically determinable impairment. Tr. 22.

4

> work involving simple, work-related decisions with few, if any workplace changes. There can be occasional interaction with coworkers, supervisors and public.

Tr. 24; *see also* tr. 24-29. The ALJ stated that this RFC "reflect[ed] the degree of limitation" he had articulated when analyzing Damron's mental functions. *See* tr. 24. Damron, the ALJ determined, could perform jobs that exist in significant numbers in the national economy.[4] Tr. 30. Specifically, the ALJ found that Damron "would be able to perform the requirements of" (1) small products assembler, (2) mail clerk, and (3) marker. Tr. 30. Therefore, he was found not disabled. Tr. 30-31. The Appeals Council denied review. Tr. 3-8. Damron filed the instant action seeking judicial review of the ALJ's decision. *See* doc. 1.

## III. ANALYSIS

Damron makes two related arguments. First, he argues that the ALJ failed to properly account for his finding that Damron had a moderate limitation in concentration, persistence, and pace, tr. 23, when he limited Damron to "simple, routine work and work involving simple, work-related decisions with few, if any workplace changes" and

---

[4] The ALJ did not consider transferability of job skills because Damron did not have past relevant work. Tr. 29; *see also* 20 C.F.R. § 416.968(d)(1) (considering transferability of skills from past work).

5

"occasional interaction with coworkers, supervisors, and public" in the RFC, tr. 24. *See* doc. 16 at 4. Second, he argues that vocational expert's ("VE") testimony was not substantial evidence that could support the ALJ's finding that Damron could perform jobs which exist in significant numbers in the national economy because the ALJ did not account for Damron's moderate limitations in concentration, persistence, and pace in his hypothetical to the VE, *see* tr. 59-61 (January 31, 2023 hearing transcript). Doc. 16 at 5-8.

The ALJ appropriately used the Psychiatric Review Technique ("PRT"), outlined in 20 C.F.R. § 416.920a, to find that Damron had moderate limitations in concentration, persistence, and pace. Tr. 23. Pursuant to the regulation and the Eleventh Circuit's decision in *Moore v. Barnhart,* he "appended [the PRT analysis] to the decision." 405 F.3d at 1214 (holding "that where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRT[] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions"). "[T]he PRT and RFC evaluations are undeniably distinct[.]" *Winschel*, 631 F.3d at 1180 (internal citations omitted). While "nothing *precludes* the ALJ from

considering the results of the [PRT] in his determination of the [RFC]," nothing mandates that the ALJ defer to the PRT's analysis' ultimate conclusions when crafting the RFC. *Id.* (emphasis added). The ALJ must assess the RFC "based on all the relevant evidence" in the record. *See* 20 C.F.R. § 416.945(a)(1).

The ALJ's RFC was supported by substantial evidence in the record. In particular, Dr. John Whitely's Psychological Evaluation, tr. 501-505, contained specific factual findings and opinions which support the ALJ's determination that Damron could perform "simple, routine work and work involving simple, work-related decisions with few, if any work place changes" and "occasional interaction with coworkers, supervisors, and public," tr. 24. Furthermore, the ALJ included these findings in his decision, and found them persuasive. *See* tr. 23-24, 26-27. For example, as to Damron's ability to have occasional interactions with others, Dr. Whitley was able to establish a rapport with Damron and observed that he was polite, fairly personable, maintained adequate eye contact, spoke normally, and "offered full sentences that were understood with adequate elaboration." Tr. 504; *see also* tr. 23, 26-27. As to Damron's ability to perform simple, routine work involving simple, work-

related decisions, Damron was able to name the current and previous President of the United States; recite serial 3's, 5's, and 7's; subtract 7's down from 100 to 79; interpret proverbs; subtract 7 from 11; and spell "world" forwards and backwards. Tr. 504; *see also* tr. 23-24, 26-27. Dr. Whitley noted that Damron's though process was logical, lucid, and coherent, and that his stream of thought was fluid. Tr. 504; *see also* tr. 24, 27. Dr. Whitely also noted that Damron made decisions in day-to-day life, and managed and organized his own shopping and finances. Tr. 503; *see also* tr. 27. Ultimately, Dr. Whitely opined that Damron could "understand, follow and process simple 2- and 3-step work task[s]." Tr. 505; *see also* tr. 27. This amounts to "more than a scintilla," *Winschel*, 631 F.3d at 1178, of evidence that Damron could perform "simple, routine work and work involving simple, work-related decisions with few, if any workplace changes" and "occasional interaction with coworkers, supervisors, and public," tr. 24.

Damron argues that his testimony and one opinion from Dr. Whitely's report contradicts this finding, and, therefore, the ALJ's conclusion that he could perform simple, routine work and work involving simple, work-related decisions is not supported by substantial

8

medical evidence in the record. *See* doc. 16 at 6-7. To the extent Damron relies on his own testimony to contradict the ALJ's RFC determination, the ALJ considered Damron's testimony about his "mental health conditions" and found that his "statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 25. As described above, the ALJ incorporated Dr. Whitely's findings into his decision. *See* tr. 23-24, 26-27. The ALJ's evaluation of Damron's testimony about the severity of his symptoms as compared with the objective medical evidence in the record was consistent with the requirements of 20 C.F.R. § 416.929. Damron has failed to identify an error in the ALJ's analysis on this front.

As to Dr. Whitely's report, Dr. Whitely made the following observation about Damron: "He was able to maintain fairly good concentration throughout this interview although *may* have difficulty over 8-hour workday, *primarily secondary to his observed pain*." Tr. 505 (emphasis added); *see also* tr. 27. The ALJ accepted this observation as persuasive. *See* tr. 27. Darmon argues that the ALJ was required to explain how finding that Damron could perform simple, routine tasks

9

was consistent with the medical evidence in the record if Dr. Whitely opined that he "was able to maintain fairly good concentration throughout this interview although may have difficulty over 8-hour workday, primarily secondary to his observed pain." Tr. 505; *see also* doc. 16 at 7-8. But this is not an opinion that Damron is *incapable* of maintaining concentration for an 8-hour workday. This is not even an opinion that Damron has *mental limitations* that could impact his ability to maintain concentration for an 8-hour workday. This is an opinion that Damron could possibly struggle to maintain concentration based on the amount of pain he is experiencing at a given time. The ALJ's determination that Damron could perform simple, routine work, *see* tr. 24, is not necessarily inconsistent with Whitely's speculation that it is possible that Damron could struggle to maintain concentration depending on his pain levels, tr. 505. Damron has not identified a lack of substantial evidence underpinning the ALJ's determination. *See generally* doc. 16.

There is relevant evidence, outlined above, that a reasonable person would accept as adequate to support the ALJ's finding that Damron could perform "simple, routine work and work involving simple, work-related

decisions with few, if any work place changes" and have "occasional interaction with coworkers, supervisors, and public." Tr. 24; *see also Winschel*, 631 F.3d at 1178. Accordingly, the ALJ's RFC determination is supported by substantial evidence. *Winschel*, 631 F.3d at 1178. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer*, 395 F.3d at 1210 (quotation omitted). Damron's first argument, therefore, fails.

Damron's second argument fails for the same reason. When an ALJ determines that a claimant's mental impairments cause limitations, the ALJ must either explicitly state that medical evidence in the record suggests that the claimant's ability to work is unaffected by those limitations or account for the limitations in his hypothetical to the VE. *See Winschel*, 631 F.3d at 1181 (holding that the VE's testimony was not substantial evidence "[b]ecause the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the claimant]'s impairments"). Here, the ALJ did not make a finding the Damron's ability to work would be unaffected by his mental limitations, *see generally* tr. 16-31, so he was required to account for Damron's limitations in his hypothetical. In the hypothetical, the ALJ

11

told the VE: "The work is limited to simple, routine work. The work would involve simple work-related decisions with few, if any workplace changes, and they could have occasional interaction with co-workers, supervision, and the public." Tr. 60 (January 31, 2023 hearing transcript). Damron argues that this was insufficient to account for his moderate limitations in concentrating, persisting, and maintain pace.[5] Doc. 16 at 5-8.

However, limiting a hypothetical to only include "unskilled work" or "simple, routine tasks" is enough where medical evidence demonstrates that a claimant can engage in unskilled or simple, routine work despite limitations in concentration, persistence and pace. *Winschel*, 631 F.3d at 1180; *see also Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 707, 712-13 (11th Cir. 2015) (finding that the ALJ's hypothetical limiting a person to "simple, routine and repetitive tasks" included all of the claimant's impairments because substantial evidence supported finding that the claimant could perform simple, routine work despite his moderate limitations in concentration, persistence, and pace).

---

[5] Damron does not challenge the hypothetical's adequacy in terms of accounting for his moderate limitation in interacting with others. *See generally* doc. 16 at 5-8.

As discussed above, Dr. Whitely's Psychological Exam provides substantial evidence for finding that Damron could engage in simple routine tasks or unskilled work despite his limitations. *See* tr. 26-27, 501-505. Therefore, the ALJ did not need to explicitly articulate Damron's moderate limitations in concentration, persistence, and pace in his hypothetical beyond advising the VE that the hypothetical person should be limited to simple, routine work. *See Winschel*, 631 F.3d at 1180; *see also Duval*, 628 F. App'x at 712-13. The ALJ's hypothetical was sufficient. The VE's testimony that there were jobs that existed in substantial numbers in the national economy that a person with Damron's limitations could perform, offered in response to the hypothetical, constitutes substantial evidence to support the ALJ's Step 5 analysis. *Cf. Winschel*, 631 at 1181. Accordingly, Damron's second argument also fails.

## IV. CONCLUSION

The Commissioner's final decision is supported by substantial evidence in the record. For the reasons articulated above, the final

decision of the Commissioner is **AFFIRMED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**SO ORDERED**, this 29th day of July, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA